**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GUIZHOU XIAOZHI SHEEP TRADING
CO. LTD.,

              Plaintiff,

       v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATES
IDENTIFIED ON SCHEDULE "A,"

              Defendants.

Case No. 1:24-cv-04765

The Honorable Franklin U. Valderrama

Magistrate Judge Jeffrey T. Gilbert

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

NOW COME Defendants acodidy, acwholesaler, addstore, alariknn, Ammoonmusic, amomall, balamer, Becoody, Better and Easy Life, big weekend, btastbo, Buying Happily Store, cesadon, conoshine, Cool BUY, Cozyroom, Cozy time, css276, DECDEAL House Store, dinwa1391, dinwa3618, Dodocool, domecool, Enjoying colourful life Store, fansfuny, Fantasy Choice, Featured Toys Store, GearUP Store, Global Home-Tools Store, golodoor, Happiness World Store, hartlan, homegarden2012, Homeused Store, hotyoyo, hsr236, iTechnology Life, keedodoo2015, lalabellstore, letsports, Light UR Life, losmee, me-202169, me_906446, Me Beauty, Mira Home Store, miracdiam666, Moobody, New LifeStyle Store, newgaga, newteckcity, quickkway, Save money, shenzhenshifenten0, shocwo2015, sunshinre, Superior Central, Teafans, tomorrowhome, Tomshineofficial, tomshoo2015, Tool-home Store, tootooup, TT Access control Store, UR BEST CHOICE, usbkits, watches-bay-global, willioau, World Deal, Wonderful buy and yoyomater ("Defendants")[1], identified on Schedule A of Plaintiff's Amended Complaint, who

---

[1] Defendants are also known as Defendant Nos. 42, 94-108, 130-43, 145-48, 151, 153-56, 158-59, 161, 164, 169, 170, 171, 173, 176-80, 182-83, 189, 198, 212, 242, 266, 318, 333, 340-41, 358,

Oppose Plaintiff's Motion for Preliminary Injunction. In support of their opposition, Defendants state as follows:

## I. INTRODUCTION

A "preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (internal quotations omitted). Here, Plaintiff's motion for a preliminary injunction is a superficial and generic attempt to extend the Court's *ex parte* TRO, relying almost entirely on the unfounded assumption that defendants will transfer assets overseas to avoid judgment. (Dkt. 25-1) This prejudiced assumption forms the bulk of Plaintiff's argument, while the essential elements required to obtain a preliminary injunction—elements for which Plaintiff bears the burden of persuasion— are only briefly listed without meaningful discussion.

Notably, the previously issued TRO was entered without any defendant having the opportunity to contest Plaintiff's claims. Plaintiff now relies heavily on that TRO without offering any additional substantive argument. A preliminary injunction demands a detailed and fact-specific analysis, yet Plaintiff's motions are so incredibly generic that neither even mention the specific product alleged to be infringed nor do they provide a single fact pertinent to the defendants' alleged infringement in this case. (Dkt. 9, generally; *see also* Dkt. 25-1) (both using a single paragraph to define "Defendants" selling unspecified "Counterfeiting Products" or "Infringing Products" which are allegedly similar to "Plaintiff's …Design" and then relying on these categories to apply generic legal principles.). Unfortunately, plaintiffs have had much

---

374, 375, 381, 383-84, 397-98, 403-05, 421, 423-24, 426-31, 434-44, 446, 448-52, 455, 457-58, and 461. Defendants include storefronts on eBay, namely, Defendant Nos. 189, 198, 212, 242, 266, 318, 333, 358, 340-41, 374-75, 381, 383, 384, 397-98, 403-05, 421, 423-24, 426-31, 434-44, 446, 448-52, 455, 457-58 and 461.

success at the preliminary injunction stage in Schedule A litigation, but Schedule A cases often do not stand up to scrutiny. *See Hanzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns*, 2024 WL 3292812, 2024 U.S. Dist. LEXIS 117034 (N.D. Ill. 2024) (awarding $284,539 to defendants after preliminary injunction was vacated and summary judgment was granted to defendants); *Cozy Comfort Co. LLC v. Individuals*, 2024 WL 2722625, 2024 U.S. Dist. LEXIS 94320 (denying preliminary injunction as to ten of 12 defendants after complaining of a cursory analysis by plaintiff); *see generally* Burstein, Sarah, The Counterfeit Sham, 138. Harv. L. Rev. ___ (forthcoming 2024), at *37, available at *https://ssrn.com/abstract=4549909* ("design patent infringement claims brought in Schedule A cases are often not particularly strong—many could even be characterized as frivolous").

In evaluating whether a preliminary injunction is appropriate, the Court must consider several factors for which Plaintiff bears the burden of persuasion; Plaintiff has failed as to each. Specifically, Plaintiff has failed to demonstrate any likelihood of success on the merits, offering only the conclusory statement that "an ordinary observer would be deceived" and pointing this Court to a list of product images without any discussion or comparison of the products to the design patent at issue (despite a court having to "generally conduct a product-by-product infringement analysis" and "make product-by-product infringement findings." *ABC Corp. I v. P'ships & Unincorporated Ass'ns*, 52 F.4th 934, 944 (Fed. Cir. 2022)(vacating preliminary injunction in a Schedule A case as no product-by-product findings were made)). More importantly, there is a substantial question of validity here because at least two of the accused infringers offered an accused solar irrigator before the priority date of the asserted patent. Plaintiff's claim of irreparable harm is speculative at best, as its explanation of potential harms is unsubstantiated and inadequately supported even by the provided affidavits. Plaintiff's argument that no adequate

remedy at law exists relies entirely on the unfounded assumption that Defendants will transfer assets overseas to avoid judgment. These Defendants have no intention of avoiding this Court's jurisdiction and are prepared to defend the claims in this Court. Finally, granting a preliminary injunction based on such vague and unsupported allegations in this context risks stifling legitimate competition without justification, contrary to the public interest.

## II. BACKGROUND

Plaintiff filed its operative First Amended Complaint against 485 listed defendants on June 26, 2024. (Dkt. 7). On July 18, 2024, Plaintiff moved for a temporary restraining order ("TRO") including an asset freeze (Dkt. 10-12). The Court granted Plaintiff's *ex parte* motion on July 30, 2024, setting the temporary restraining order to become effective on August 2, 2024 and expire fourteen days later. (Dkt. 13, 14). Plaintiff subsequently sought to extend the TRO, which the Court granted, continuing the TRO to August 30, 2024. (Dkt. 17, 18). A day later, Plaintiff filed the present motion for preliminary injunction, (Dkt. 25).

Plaintiff's motion for preliminary injunction and accompanying memorandum of law requests that the Court "enter the preliminary injunction against the Defendants under the terms which were employed in the TRO." (Dkt. 25-1, p. 5). The motion and memorandum make just two arguments: first, because this Court already issued a TRO, it should also issue a preliminary injunction; and second, if there were no preliminary injunction, the defendants would move assets overseas thereby preventing Plaintiff from recovering a money judgment. (*See* Dkt. 25-1, pp. 1-6, *generally*). Plaintiff only fleetingly mentions the elements necessary to issue a preliminary injunction (and for which it bears the burden of persuasion) choosing to merely list the elements without any meaningful argument. (Dkt. 25-1, p. 3).

## III. ARGUMENT

As was explained in the preceding Introduction and is reiterated time and time again by the Seventh Circuit, a preliminary injunction is an extraordinary measure that is never granted as a matter of right; it is only available to plaintiffs who carry the burden of persuasion as to all prerequisite factors. *See Orr,* 953 F.3d at 501, *see also Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017), *and see Signode Corp. v. Weld-Loc Systems, Inc.*, 700 F.2d 1108, 1111 (7th Cir. 1983) ("A preliminary injunction is an extraordinary remedy, available only to plaintiffs who carry the burden of persuasion as to all four factors.")

Specifically, the Supreme Court has instructed that a court's discretion in granting or denying preliminary injunction is guided by four factors: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Orr,* 953 F.3d at 501 (quoting *Winter v. NRDC, Inc.,* 555 U.S. 7, 20 (2008)). In the Seventh Circuit, these factors are organized such that the movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-613 (7th Cir. 2020). Then, if the movant makes this threshold showing, the court proceeds to consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the "public interest." *Id.*

Irreparable harm and likelihood of success on the merits "are the most critical [factors] in a patent case, and a court must deny a motion for a preliminary injunction if 'a party fails to

establish either of the two critical factors.'" *Pressure Specialist, Inc. v. Next Gen Mfg. Inc.*, 469 F. Supp. 3d 863, 868 (N.D. Ill. 2020) (quoted source omitted).

As an initial matter, Plaintiff attempts to argue that because the Court already issued a TRO it should grant the motion for preliminary injunction. (Dkt. 25-1, pp 2-3) This assumption is inappropriate. The TRO was entered without notice as to any Defendant and without any challenge to the (sparse) allegations made by Plaintiff. An opposed preliminary injunction cannot survive based solely on the same unsubstantiated, non-specific allegations that were used as the basis for Plaintiff's motion for a TRO. *Cf. Mission Power Engineering Co. v. Continental Casualty Co.* 883 F.Supp. 488 (C.D. Cal. 1995) (discussing the adverse effect *ex parte* relief has on due process). Nothing about this Court's previously entered TRO independently justifies Plaintiff's present request. Now that Defendants can finally challenge Plaintiff's request, it is clear that Plaintiff's arguments are insufficient to justify the extraordinary relief of a preliminary injunction.

A.     **Plaintiff has not met its burden of persuasion on the preliminary injunction factors, a failure that requires denial of the preliminary injunction.**

1.     **Likelihood of Success on the Merits.**

A party seeking preliminary injunction must first meet a threshold issue of likelihood of success on the merits, meaning that the movant must show that it has a better than negligible chance of succeeding on the merits. *International Kennel Club of Chicago, Inc. v. Mighty Star*, Inc., 846 F.2d 1079, 1084 (7th Cir. 1988). To establish a likelihood of success on the merits in patent cases, a patent holder must "show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). Where an accused infringer "raises a substantial question concerning either infringement or

validity, i.e., asserts an infringement or invalidity defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001) (internal quotation marks omitted).

### a. There is a Substantial Question of Validity

Cool BUY (Defendant # 94) was accused of infringing US Patent No. D1,008,412 ("asserted patent") by offering a solar powered irrigator for sale ("accused irrigator"). A screen capture of the listing for the accused irrigator follows:



(Dkt. 11-3 at p. 8)

The accused listing became active on Walmart's United States website on February 23, 2023. (Huang Decl. ¶ 4). In other words, the above product was offered for sale in the United States and a person in the United States could purchase the accused irrigator on February 23, 2023, well prior to the priority date of the asserted patent, which is March 24, 2023. (Masson Decl. ¶ 3). Accordingly, there is a substantial question of the asserted patent's validity. *See Peters v. Active Mfg. Co*., 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier."); *Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc*., 246 F.3d 1368, (Fed Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier.").

Huang's sworn declaration testimony is corroborated by design patents that issued to Cool BUY's supplier and which also predate the asserted patent. The accused irrigator was supplied to Cool BUY by Shenzhen BSV Solar Energy Co., Ltd ("BSV") or 深圳市百思威太阳能有限公. (Huang Decl. ¶ 5). BSV owns three relevant design patents, namely, U.S. Patent No. D1,031,633, CN 30807044 and EM 015006901-0001, all of which illustrate a solar-powered irrigator. (*Id*.; Masson Decl. ¶ 3). The three patents predate the asserted patent, which has a priority date of March 24, 2023: CN 30807044 was filed on December 7, 2022; U.S. Patent No. D1,031,633 has a priority date of December 7, 2022; and EM 015006901-0001 was filed on December 21, 2022. (Masson Decl. ¶ 3). These patents appear to cover the product supplied to Cool BUY by BSV. (Huang Decl. ¶ 5). Representative figures from the three BSV patents are shown below.



CN 30807044

US D1,031,603, Fig. 1.

EM 015006901-0001

(Masson Decl. Exs. A-C.)

Furthermore, similar to Cool BUY, non-party eBay also has shown that at least Seller No. 279's listing, which is accused of infringing, went active on January 20, 2023, again, well before

the effective filing date of the asserted patent of March 24, 2023. (Dkt. 31 at pp. 7-8). Accordingly, eBay has also shown a substantial question of validity.

In view of the above, the preliminary injunction should be denied as to the Defendants and to all defendants.

### b. There is a Substantial Question of Infringement

Given that a substantial question of validity necessarily defeats Plaintiff's motion, it is not necessary to show that there are substantial questions of infringement. However, Plaintiff's failure to provide a product-by-product analysis hides its frivolous infringement contentions. *See ABC Corp. I*, 52 F.4th at 944 ("Even a cursory review of the four accused products shows that they are different from each other, display features not found in the asserted patents, and lack features shown in the asserted patents" and vacating preliminary injunction in a Schedule A case as no product-by-product findings were made), *remanded to sub. nom. Hanzhou Chic Intelligent Tech. Co.*, 2024 U.S. Dist. LEXIS 117034 (awarding $284,539 to defendants after preliminary injunction was vacated and summary judgment was granted to defendants).

Turning to the law, a "design patent is infringed '[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008)). The patentee has the burden of proving infringement by a preponderance of the evidence. *Egyptian Goddess*, 543 F.3d at 679. "Where the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." *Ethicon Endo-Surgery*, 796 F.3d at 1335. 'Where a patented design and an accused product are

9

not "plainly dissimilar," the court must conduct a three-way analysis comparing the accused product, the patented design, and the prior art' even at the preliminary injunction stage. *ABC Corp. I*, 52 F.4th at 942; *see Egyptian Goddess, Inc. v. Swisa, Inc*. 543 F.3d 665, 677-78 (Fed. Cir. 2008) (*en banc*) ("ordinary observer test … [is] conducted in light of prior art").;

Plaintiff's motion for preliminary injunction is silent on its likelihood of success on the merits (*see* Dkt. 25-1, *generally*) and Plaintiff's motion for temporary restraining order merely asserts, in a conclusory manner, that Defendants' products "infringe directly and/or indirectly the designs claimed in the Plaintiff's Patent." (Dkt. 9, at p. 5). Plaintiff provides no comparison, not even from one view, never mind the eight different views provided in the asserted patent, nor examples of any alleged similarities between its patent and the products of any defendant. Moreover, Plaintiff fails to provide any comparison with the prior art, not even the prior art listed on the asserted patent (*see* Dkt. 2-1 at p. 1-2), much less with BSV's three patents. Plaintiff's "look and see" argument is plainly insufficient to show a likelihood of success.

Representative images from Plaintiff's asserted design patent follow:

 

U.S. Patent D1,008,412 S, Figure 1       U.S. Patent D1,008,412 S, Figure 2

*See* asserted patent (Dkt. 2-1).

The asserted patent is characterized by: a roughly rectangular body, a solar panel having a 4 x 6 grid of rectangular solar receptors, two small ports on the underside of the body on the right, and three optional ports located on the left and in the center.

Plaintiff's evidence as to Defendants' dissimilar products include the following examples:



Defendant No. 405 (Dkt. 11-7 at p. 96)

Defendant No. 147 (Dkt. 11-3 at p. 194)

Defendant No. 151 (Dkt. 11-3 at p. 209)

Defendant Nos. 131-33, 135, 137-43, 145-46, 148 (e.g., Dkt. 11-3 at p. 198)



Defendant No. 136 (Dkt. 11-3 at p. 152)

There are numerous differences between Defendants' devices and the asserted patent such as no solar panel, an additional controller with connections, a different pattern of solar cells, and solar panels with no connector shown or just one rather than two. More egregiously, plaintiff presented no evidence whatsoever as to Defendant No. 405. *See* above. It is thus highly unlikely that an ordinary observer would be deceived into thinking that any of the above were the Plaintiff's products. Consequently, Plaintiff cannot show a likelihood of success on the merits, and the Motion for Preliminary Injunction should be denied as to the Defendants.

### 2.   Inadequate Remedies at Law and Irreparable Harm

Courts have established that "the simple recitation of potential economic injuries like the loss of sales, market share and profits" is not enough to signify irreparable harm without more evidence. *Eli Lilly & Co. v. Am. Cyanamid Co.*, 896 F. Supp. 851, 860 (S.D. Ind. 1995). To allow otherwise, "would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances." *Id.* (quoting *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990)). Further, conclusory affidavits asserting irreparable harm from an infringer's competition without accompanying evidence of market share or sales loss are "insufficient to justify injunctive relief." *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d 740, 749 (N.D. Ill. 2010).

Plaintiff's argument exemplifies the kind of insufficient claims and conclusory affidavit discussed above. Plaintiff's alludes to non-specific confusion, loss of goodwill, and reputational harm, which *could* form the basis for irreparable harm – had Plaintiff provided a single shred of evidence substantiating these conclusory claims. Instead, Plaintiff relies on the declaration of Brandon Lee for the generic and speculative claims that "Defendants' activities lead to a continuous cycle of harm in the form of loss of Xiaozhi new customers, which in turn reduces Xiaozhi's hard-earned market share" and "Xiaozhi have been irreparably damaged from the loss of market share and erosion of its patent exclusivity as a result of Defendants' unlawful actions." (Dkt. 11, pp. 4-5). These statements are made without any supporting evidence.

In *Vandor Grp., Inc. v. Batesville Casket Co., LLC.*, 2023 U.S. Dist. LEXIS 231742, at *9 (S.D. Ind. Oct. 27, 2023), Vandor submitted a Declaration from its CEO stating that defendant's product has caused Vandor economic and irreparable harm, but the CEO did not explain why the harm is irreparable. The court distinguished Vandor's argument and affidavit from that in *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012), where the plaintiffs offered expert witness testimony, financial records, and evidence about the market. The Court concluded that Vandor did not offer any evidence beyond its own speculation and its claim that it has and will continue to suffer loss of good will, prospective business on other fronts, and loss of market share are a "simple recitation of potential economic injuries" and do not merit a finding of irreparable harm. *Vandor Grp.*, 2023 U.S. Dist. LEXIS 231742, at *9. The same finding is warranted here as Plaintiff's argument and affidavit similarly rely on speculation without any evidence.

Plaintiff's argument and the Lee Declaration also fail to explain how these supposed potential harms could not be compensated with monetary damages should Plaintiff prevail, thus

failing to fulfill Plaintiff's burden on this prong. Plaintiff's slew of citations suggesting that foreign corporations are difficult to collect money judgments from misses a crucial point: in the cases Plaintiff cites, the plaintiffs there specifically identify how the defendants in question have so few or no U.S. contacts that collection could be impossible. Here, however, Plaintiff has made no such showing beyond a conclusory statement that the Defendants might reside in the People's Republic of China or other foreign jurisdictions. (Dkt. 9, p. 8). Plaintiff's (itself a Chinese entity) belief about the supposed residency of Defendants does nothing to carry its burden of persuasion that a money judgment for this particular case and for these particular defendants would not be recoverable should Plaintiff prevail.

### 3. Balancing the Harms and Public Interest

Based on the above, Plaintiff has failed to clear the threshold factors to even reach the phase of balancing the harms and public interest. Defendants have raised substantial questions of patent invalidity and non-infringement, which defeat Plaintiff's motion. However, if this Court determines that it will engage in an analysis of the balancing factors, it will further confirm that Plaintiff's motion should be denied. In performing this balancing analysis, the Court "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

Put simply, the denial of Plaintiff's motion for preliminary injunction will have no impact on Plaintiff and will not harm the public in any tangible way. In contrast, the issuance of the requested preliminary injunction would have a substantial and severe impact on Defendants and their businesses and will harm the ability of Defendants to provide the public with the non-infringing goods it offers. Even if this Court were to entertain the possibility that the Plaintiff's

chance of success is not negligible, per the sliding scale approach, the scale still tips decisively in favor of the Defendants when considering that a preliminary injunction would have no measurable impact on Plaintiff but would severely harm Defendants and the public interest.

Furthermore, it is difficult to reconcile Plaintiff's claim that Defendants would fail to appear in court if their assets are released with Defendants' present participation in this litigation. Plaintiff's baseless accusations that Defendants would move assets to offshore bank accounts and avoid the jurisdiction of this Court simply because Defendants "upon information and belief, reside in the People's Republic of China or other foreign jurisdictions" is not supported by the record or any specific evidence. (Dkt. 9, p. 8). Defendants have been active participants in this litigation. Furthermore, given the above discussion above about Plaintiff's likelihood of success and Defendants' defenses to Plaintiff's claims, Defendants have every incentive to remain in these proceedings and litigate.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for preliminary injunction against them.

Dated: September 24, 2024          Respectfully submitted,

*/s/ Katelin N. Scolaro*
Mark K. Suri (6199636)
Roger M. Masson (6283475)
Katelin N. Scolaro (6342774)
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Telephone: (312) 704-3000
Facsimile: (312) 704-3001
msuri@hinshawlaw.com
rmasson@hinshawlaw.com
kscolaro@hinshawlaw.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 24, 2024, the foregoing **DEFENDANTS'**

**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** was

electronically filed with the Clerk of the U.S. District Court using the Court's CM/ECF system,

which will accomplish service electronically on all Counsel of Record.

> */s/ Katelin N. Scolaro*
> Katelin N. Scolaro